IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

EMILY FRANCE, individually and as the mother
and guardian of O.F., a minor child, a minor

      PLAINTIFFS

v.

TRANS STATES AIRLINES, LLC; AND
UNITED AIRLINES, INC.,

      DEFENDANTS

---

# COMPLAINT

---

      COME NOW the plaintiffs, Emily France, individually and as the mother and guardian of O.F., her minor child, by and through her undersigned counsel, and avers and submits the following as her civil complaint in this matter:

      1.      This action arises out of the negligence of Defendants Trans States Airlines, LLC ("Trans States"), and United Airlines, Inc. ("United"), with respect to the operation of United Flight 4644 from Denver, Colorado, to El Paso, Texas, on June 22, 2017, and the personal injuries sustained as a proximate cause thereof by the Plaintiffs.

## PARTIES

      2.      The Plaintiffs are citizens and residents of the State of Colorado.  Plaintiff Emily France is the natural mother and guardian of Plaintiff O.F., her minor child.

      3.      Defendant Trans States is a limited liability company with its principal place of business located in the State of Missouri.  Defendant Trans States routinely engages in

1

continuous and systematic business in the State of Colorado, under and by virtue of the laws of Colorado, and is licensed to do business in the State of Colorado.  Defendant Trans States can be served with process through its registered agent, The Corporation Service Company, at 1900 W. Littleton Boulevard, Littleton, CO 80120.

4.      "Trans States Airlines provides scheduled commercial service on behalf of United Airlines."  *See* http://www.transstates.net/passengers/Pages/passengers.aspx.

5.      Defendant United is a corporation organized under the laws of the State of Delaware with its principal place of business located in the State of Illinois.  United routinely engages in continuous and systematic business in the State of Colorado, under and by virtue of the laws of Colorado, and is licensed to do business in the State of Colorado. Defendant United can be served with process through its registered agent, The Corporation Company, at 7700 East Arapahoe Road, Suite 220, Centennial, Colorado 80112.

6.      United is a domestic and international airline.  It is one of the largest airlines (passengers serviced) at Denver International Airport ("DIA").

7.      Trans States and United, at all material times, were in control of, and responsible for, the Plaintiffs' safe round trip transport to and from DIA from Denver, Colorado to El Paso, Texas onboard United Flight 4644 on June 22, 2017.

8.      At all times relevant and material hereto, Defendants United and Trans States conducted business and operations into and out of DIA in association with and pursuant to agreements with one another, under the brand name "United Express." Defendant Trans States, at all times material and relevant hereto, provided services, personnel, support, facilities, assistance, equipment, and critical information and data for safety, among other things, to United with respect to aircraft, passengers, flight crews and operations at DIA.

9.     At all times relevant, Defendants Trans States and United, and each of them, were, pursuant to various agreements and partnerships to provide scheduled commercial airline service, engaged in a partnership, joint venture, joint adventure, or joint enterprise because they combined in a joint business enterprise and community of interest for their mutual benefit, with an express or implied understanding or agreement that they were to share in the profits or losses of the enterprise, and that each of them was to have a voice in its control or management. Defendants Trans States and United, and each of them, substantially collaborated with forum residents and engaged in substantial activity in Colorado in furtherance of their partnership, joint venture, joint adventure, or joint enterprise. As a result, the minimum contacts of each partner, co-venturer, co-adventurer, or co-enterpriser in Colorado are attributable to the other partners, co-venturers, co-adventurers, or co-enterprisers such that personal jurisdiction over one Defendant means personal jurisdiction over each of the other Defendant.  As such, Defendants Trans States and United, and each of them, have sufficient minimum contacts necessary to subject them to personal jurisdiction in this Court. In addition, Defendants Trans States and United maintain places of business and conduct business in Colorado.

## JURISDICTION AND VENUE

10.     Jurisdiction exists pursuant to 28 U.S.C. 1332, in that the citizenship of the parties is diverse as aforesaid, and the amount in controversy exceeds $75,000.

11.     Venue in this district is proper pursuant to 28 U.S.C. 1391, in that the events giving rise to Plaintiffs' cause of action occurred herein at Denver International Airport.

## FACTS

12.     At all times relevant hereto, the Defendants held themselves out to the public as engaged in business of transporting people from place to place to place for compensation and were acting as common carriers.

13.     At all times relevant hereto, the Defendants were domestic common carriers authorized to conduct and engage in air transportation by the Federal Aviation Administration.

14.     Prior to June 22, 2017, Plaintiff Emily France purchased tickets for United Flight 4644, an airline flight operated by the Defendants, for herself and her son O.F., which called for round trip transportation from Denver, Colorado, to El Paso, Texas.

15.     On June 22, 2017, Plaintiffs boarded Flight 4644 at Denver International Airport ("DIA"). O.F. was issued a ticket as lap infant, as he was just four months old.

16.     When Plaintiffs boarded Flight 4644, the cabin was extremely hot.  Only hot air would blow out of the cabin's air conditioning system, and Plaintiff Emily France nursed her son in an effort to keep him hydrated in the extreme heat.

17.     Shortly thereafter, officials on Flight 4644 announced that there would be a lengthy delay on the tarmac in order to add additional fuel to the plane to account for anticipated weather-related route adjustments.   Officials announced that passengers were not allowed to leave the plane at this time.

18.     The extreme heat continued to build in the cabin of Flight 4644.  Plaintiff O.F.'s face began to turn red and he began to become agitated from the extreme heat.  Plaintiff Emily France informed a flight attendant that she was concerned about her son's medical condition due to the extreme heat and requested assistance.  The flight attendant merely apologized for the hot temperature and brought Plaintiffs some ice in a plastic bag.

4

19.     Later, officials on Flight 4644 opened the cabin doors while the plane remained o
the tarmac, ostensibly to permit air circulation and alleviate to extreme heat.  However, this
simply permitted additional sunlight and a hot breeze off of the tarmac into the cabin.  Plaintiff
O.F.'s torso began to get red.   Plaintiff Emily France continued to express her concern about her
son's well-being to a flight attendant, who again merely provided Plaintiffs with ice in a bag and
ice wrapped in a napkin.  Plaintiff Emily France was drenched in sweat at this point from the
heat in the cabin, felt sick to her stomach, and was concerned for her own well-being as well.
Officials on Flight 4644 provided her water, but it was warm.  She was advised by officials on
Flight 4644 that nothing could be done about the heat until the plane was in the air.

20.     After approximately one hour had passed, officials on Flight 4644 announced that
passengers would be permitted to depart the plane, but, in order to do so, passengers were
required to remove all of their belongings and that there was no guarantee they would be
permitted back onto the plane.  Plaintiff Emily France did not feel she could remove her
belongings under the circumstances and initially stayed on the plane, standing with O.F. by the
doorway and on the outside stairs.  The air temperature on the tarmac remained extremely hot.

21.     Eventually Defendants' personnel on the ground directed Plaintiffs inside the
terminal, even though their belongings remained on the plane.  However, Plaintiffs were directed
into a first-floor loading area in the terminal which lacked the conditioned air of the main
passenger area.  This loading area was still hot and did not permit Plaintiffs to cool off.  Plaintiff
Emily France attempted to nurse her son, but he was too hot and agitated to do so.  Defendants'
personnel then retrieved Plaintiff's bag that contained a bottle of formula from the cabin of
Flight 4644.  However, the formula had gotten so hot from the extreme heat in the cabin that the

formula smelled sour.  Plaintiff Emily France attempted to mix new formula, but her son would not drink it.

22.     After approximately 20 minutes had passed, Plaintiffs were directed back onto Flight 4644.  The cabin was even hotter than before.  Hot air continued to blow from the cabin ventilation system.  The cabin doors were closed and officials on Flight 4644 announced that there was still no timetable for takeoff.  Plaintiff Emily France felt nauseous from the extreme heat.  Meanwhile, Plaintiff O.F.'s condition began to deteriorate.  He was hot.   His body was red.  He was inconsolable.

23.     Plaintiff Emily France then requested that she and her infant son be permitted to leave the plane.  The plane doors were opened but Plaintiff's request was denied.  Passengers began to advise Plaintiff Emily France to strip her son's clothes.  Shortly thereafter, Plaintiff O.F. became limp and unresponsive.  Plaintiff Emily France requested an ambulance.  A flight attendant advised her that one would be waiting at the gate, but the plane remained stationary on the tarmac.  Plaintiff Emily France was frantic, sick from the heat and from worry, and she believed her infant son was going to die in her arm from lack of medical attention in the extreme heat.  A flight attendant shouted to ground personnel to bring stairs to the plane but was told that it was not possible to do so and that the plane would have to return to the gate.  The door to the cabin was closed, which caused the cabin temperature to rise, and the plane began to move to a gate.  During this time, flight attendants had begun to rub ice cubes on Plaintiff O.F.

24.     Eventually, Flight 4644 returned to the gate.  Plaintiffs were taken off the plane and met with EMTs inside the terminal.  At this point, Plaintiff O.F. remained listless.  His hands and feet were splotchy.  Plaintiffs were taken by ambulance to Children's Hospital in Denver

where Plaintiff O.F. received emergency medical treatment for altered consciousness brought on by heat exhaustion.  Plaintiffs have incurred medical bills related to same.

25.     As a result of the foregoing traumatic event, during which Plaintiff Emily France (a) suffered physical injuries to her own person and witnessed the same to her infant son and (b) suffered extreme emotional distress and witnessed the same suffered by her infant son, Plaintiff Emily France has suffered and will in the future continue to suffer extreme emotional trauma and distress, and has and will continue to incur medical expenses related to same.

## FIRST CLAIM FOR RELIEF

## NEGLIGENCE

26.     Plaintiffs incorporate by reference each and every prior and subsequent allegation as though fully set forth herein.

27.     At all times relevant, Defendants, and each of them, were common carriers engaged in the business of providing air transportation to passengers within the United States.

28.     At all times relevant, Defendants, and each of them, owed Plaintiffs a duty of utmost care and to operate their aircraft in the safest manner possible.

29.      At all times herein Defendants, and each of them, negligently, carelessly, and recklessly, breached their duty of care to the Plaintiffs by failing to safely maintain, operate, equip, manage Flight 4644 and/or by failing to properly and safely train, teach, educate, prepare, inform, alert, monitor, guide or tutor its pilots, crew and other personnel to operate a passenger aircraft and by failing to abide by policies that would have timely and safely responded to or prevented emergency situations, including but not limited to the one experienced by United Flight 4644.

30.     As a direct and proximate result of Defendants', and each of their acts and omissions, including gross negligence and recklessness of the Defendants, Plaintiffs were seriously injured and damaged as alleged herein and will continue to suffer from their physical, mental, and economic injuries for the foreseeable future.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF FEDERAL LAW

### (Against All Defendants)

31.     Plaintiffs incorporate by reference each and every prior and subsequent allegation as though fully set forth herein.

32.     At all times herein Defendants, and each of them, operated Flight 4644 "in a careless or reckless manner so as to endanger the life or property of another" in contravention of 14 CFR 91.13.  Defendants breached this duty of care to its passengers, including the Plaintiffs, in the following, but not limited to the following, ways:

(a)     Defendants operated Flight 4644 with excessive and life-threatening cabin air temperatures;

(b)     Defendants failed to adequately cool Flight 4644, a midday flight, prior to boarding, even though Defendants knew (or should have known) of the risk of lengthy tarmac delays at Denver International Airport and knew (or should have known) of the forecast for hot weather during mid-summer.

33.     Defendants, and each of them, failed to provide "adequate medical attention" to Plaintiffs while Plaintiffs were in detained in the dangerously hot cabin of Flight 4644 during the aforementioned tarmac delay in contravention of 14 CFR 259.4(b)(4) insofar as:

(a)      It was foreseeable that the cabin temperatures of Flight 4644 (or other planes) would reach excessive and life-threatening levels during extended tarmac delays in mid-summer months and put passengers at risk of heat exhaustion or other heat-related discomforts or heat-related injuries, yet Defendants failed to plan for and provide cool and/or damp towels and cool water for effectively and efficiently cooling passengers under such circumstances and reducing the risk of such injuries;

(b)      Defendants failed to consult (or make available for consultation by passengers) a person knowledgeable of the ways by which passengers could most effectively and efficiently cool themselves under the conditions experienced on Flight 4644.  Defendants recommended that Plaintiff Emily France rub ice on her infant son, which was a poor choice for cooling an infant child.  An infant child's natural reaction is to cry when being touched with an uncomfortably cold object and crying simply increases an infant's body temperature.

(c)      Defendants failed to recognize the seriousness of Plaintiff O.F.'s medical condition and waited until he lost consciousness before calling for emergency medical help.

34.      The FAA Modernization and Reform Act of 2012 (the ''Act'') requires U.S. air carriers (including the Defendants) to submit emergency contingency plans for lengthy tarmac delays to the Secretary of Transportation.

35.      Under the Act, U.S. carrier contingency plans must contain a description of how the carrier will provide adequate food, potable water, restroom facilities, comfortable cabin temperatures, and access to medical treatment for passengers onboard an aircraft when the departure of a flight is delayed or disembarkation of passengers is delayed. 49 U.S.C. § 42301(b)(2).

36.     The Defendants, as air carriers, are required by law to adhere to their emergency contingency plan.  49 U.S.C. § 42301(e)(3).

37.     Defendants' "Tarmac Delay Contingency Plan" provides, in pertinent part:

"In the unusual event of such a delay either before takeoff or after landing, United will seek to ensure that:

***

4) For all flights covered by this Plan, United will provide operable lavatory facilities, maintain comfortable cabin temperatures, and ensure adequate medical attention if needed while the aircraft remains on the tarmac.

***

7) United has sufficient resources to implement this Plan."

*See* https://www.united.com/ual/en/us/fly/tarmac-delay.html.  United's Tarmac Delay Contingency Plan dictates "[t]he tarmac delay contingency plan of the operating carrier governs when it is operating a flight on which the United (UA) code is displayed."  This is consistent with Defendant Trans States' internal policy, which provides that the terms of United's Tarmac Delay Contingency Plan apply to their flights.

http://transstates.net/passengers/Documents/TRANS%20STATES%20DOT%203-Hour%20Rule%20Final%20091415.pdf.  This is also consistent with Trans States' website, http://www.transstates.net/passengers/Pages/passengers.aspx ("Tarmac Delay Plan" links to https://www.united.com/ual/en/us/fly/tarmac-delay.html).

38.     Upon information and belief, United's May 14, 2012 Tarmac Delay Contingency Plan was in place on June 22, 2017 and contained these same requirements.

39.     Defendants, and each of them, breached and violated Federal Law and their Tarmac Delay Contingency Plan (the "Plan") by failing to provide comfortable cabin

temperatures, by failing to ensure adequate medical attention, and by failing to commit sufficient resources to implement the "Plan."

40.     Defendants, and each of them, failed to meet customers, including Plaintiffs, "essential needs" while Plaintiffs were in detained in the dangerously hot cabin of Flight 4644 during the aforementioned tarmac delay in contravention of 14 CFR 259.5(b)(7), for the reasons aforesaid.

41.     Defendants, and each of them, were careless, negligent and reckless by directing Plaintiffs into a first floor loading area that lacked adequate conditioned air and was still excessively warm after the initial tarmac delay when Plaintiffs were permitted to enter the terminal, inasmuch as Defendants knew (or should have known) that Plaintiffs were already suffering from heat exhaustion and that the aforementioned first floor loading area would not permit Plaintiffs to sufficiently cool off prior to reentering the cabin of Flight 4644.

42.     As a direct and proximate result of Defendants' conduct, and each of their acts and omissions, including their violations of Federal Law, Plaintiffs were seriously injured and damaged as alleged herein and will continue to suffer from their physical, mental, and economic injuries for the foreseeable future.

## DAMAGES

As a proximate results of the aforesaid actions, inactions, fault, carelessness and negligence of the Defendants, and each of them, Plaintiffs were injured as aforesaid, have incurred medical bills and will do so in the future and have suffered substantial emotional distress and will do so in the future, and endured pain and suffering and loss of enjoyment of life.

WHEREFORE, the Plaintiffs demand judgment against the Defendants, and each of them, in an amount in excess of the jurisdictional minimum of this Court, pre-judgment and post-

judgment interests, costs and attorneys fees, exemplary and/or punitive damages, and any other relief that this Court deems just and proper.

**JURY DEMAND**

The Plaintiffs demand a trial by jury on all issues so triable.

Dated: June 20, 2019                           Respectfully submitted,

                                               By: *s/ Anthony P. Bolson*
                                               Anthony P. Bolson, CO Reg. #49208
                                               BOLSON LAW, LLC
                                               3900 E. Mexico Ave., Suite 300
                                               Denver, CO 80210
                                               Tel: (720) 506-9224
                                               tony@bolsonlawllc.com

                                               By:  s/ *L. Danté diTrapano*
                                               L. Danté diTrapano (WV Bar No.6778)
                                               David H. Carriger (WV Bar No. 7140)
                                               CALWELL LUCE DITRAPANO PLLC
                                               Law and Arts Center West
                                               500 Randolph Street
                                               Charleston, WV  25302
                                               Tel: (304) 343-4323
                                               dditrapano@cldlaw.com
                                               dcarriger@cldlaw.com

                                               ATTORNEYS FOR PLAINTIFFS