IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01795-REB-NRN

EMILY FRANCE, individually and as the mother
and guardian of O.F., a minor child, a minor,

Plaintiffs,

v.

TRANS STATES AIRLINES, LLC; and
UNITED AIRLINES, INC.,

Defendants.

---

**REPORT AND RECOMENDATION ON
DEFENDANTS' MOTIONS TO DISMISS NEGLIGENCE *PER SE* CLAIM
(DKT. #25 & #27)**

---

**N. Reid Neureiter
United States Magistrate Judge**

1. **Introduction**

This is a negligence lawsuit arising out of allegations that the defendant airlines,

Trans States Airlines ("Trans States") and United Airlines ("UAL"), (collectively, the

"Defendant Airlines"), negligently allowed the temperature inside a passenger plane

delayed on the Denver International Airport tarmac to rise to a dangerous level, causing

an infant child to overheat and suffer physical injuries. The Defendant Airlines have

moved to dismiss Plaintiffs' negligence *per se* claim, largely on the ground that

regulations issued by the Federal Aviation Administration do not create a private right of

action.

On October 23, 2019, I heard argument on the Defendants Airlines' Partial Motions to Dismiss Plaintiff's claim for negligence *per se* (Dkt. ##25 & 27) based on alleged violations of federal airline regulations. After argument, reviewing some of the authorities cited by the Parties raised in my mind the legal question whether Plaintiffs' claims are preempted by the Airline Deregulation Act of 1978 ("ADA"). *See* 49 U.S.C. § 41713(b)(1). The briefing on that question was not adequate. Therefore, on October 30, 2019, I gave the Parties the opportunity to brief that issue, ordering them to file simultaneous briefs by November 11, 2019. *See* Dkt. #49. The Parties submitted supplemental briefs. *See* Dkt. ##50 & 52.

I have considered the Defendant Airlines' Motions, Plaintiffs' Opposition, the oral arguments, and the supplemental briefs submitted consistent with my order of October 30. Considering all this information and the relevant authorities, I recommend that Defendants' Motions to Dismiss Plaintiff's negligence *per se* claim be **DENIED**.

## 2. Background Facts as Alleged in the Amended Complaint

This lawsuit is filed by Emily France, both individually and as mother/guardian of her infant child, O.F. Ms. France's and her child's claims arise from the operation of United Flight 4644 from Denver, Colorado, to El Paso, Texas on June 22, 2017. Flight 4644 was being flown by Trans States under the brand name "United Express." Ms. France alleges that the Defendant Airlines together "operated" the flight. Dkt. #20 ¶ 14. Ms. France and her infant child were on round-trip tickets to El Paso. Ms. France's child, O.F., being only four months old, was issued a ticket as a lap infant. *Id.* ¶ 15. When Plaintiffs boarded the flight, it was extremely hot and only hot air would blow out of the

cabin's air conditioning system. Ms. France nursed her son to keep him hydrated in the extreme heat. *Id.* ¶ 16.

Officials on Flight 4644 then announced there would be a lengthy delay to add additional fuel but the passengers would not be allowed to leave the plane. *Id.* ¶ 17. The extreme heat continued to build in the cabin. The infant child's face began to turn red and he became agitated in the extreme heat. A flight attendant was informed of the concern for the child's condition due to the heat and the flight attendant apologized for the temperature and brought some ice in a plastic bag. *Id.* ¶ 18. The cabin doors were opened to permit air circulation to alleviate the extreme heat. Ms. France was "drenched in sweat," began to feel sick to her stomach, and was concerned for her own well-being as well. Officials on the flight advised nothing could be done about the heat until the plane was in the air. *Id.* ¶ 19.

After an hour, officials said the passengers could leave the plane, but would have to remove all their belongings to do so. Ms. France initially stayed on the plane because she did not feel she could remove her belongings. *Id.* ¶ 20. When Ms. France and her child were finally directed off the plane, they were sent to a first-floor loading area that was still hot and did not permit her or her child to cool off. *Id.* ¶ 21. Twenty minutes later, Ms. France and her child were directed back on the place, and the cabin was even hotter than before. The cabin doors were closed, but it was announced that there was still no timetable for takeoff. Ms. France's child's condition deteriorated. He was hot, his body was red, and he was inconsolable. *Id.* ¶ 22.

Ms. France asked that she be allowed to leave the plane. The plane's doors were opened but the request to deplane was denied. Passengers began to advise Ms.

France to strip her son's clothes off. The child became limp and unresponsive. Ms. France requested an ambulance, but the plane remained stationary. A flight attendant yelled for stairs to be brought to the door, but that was not done. Eventually, the plane's doors were closed so that the aircraft could return to the gate. During this time, flight attendants rubbed ice cubes on the child. *Id.* ¶ 23. When Flight 4644 returned to the gate, Ms. France and her child finally left the aircraft to be met by EMTs inside the terminal. The child was listless and his hands and feet were splotchy.  He was taken by ambulance to Children's Hospital where he received emergency medical treatment for altered consciousness brought on by heat exhaustion. *Id.* ¶ 24. Plaintiffs claim that as a result of these traumatic events they suffered physical injuries and Ms. France suffered extreme emotional distress from having witnessed her child experiencing heat exhaustion. *Id.* ¶ 25.

### 3. Claims for Relief

Ms. France and her child assert two claims for relief. First, they sue in negligence, alleging that the Defendant Airlines negligently, carelessly, and recklessly, breached their duty of care to Plaintiffs by "failing to safely maintain, operate, equip, manage Flight 4644 and/or by failing to properly and safely train, teach, educate, prepare, inform, alert, monitor, guide or tutor its pilots, crew and other personnel to operate a passenger aircraft and failing to abide by policies that would have safely responded to or prevented the emergency situation." *Id.* ¶ 29.

Second, Plaintiffs sue in negligence *per se*, alleging that the Defendant Airlines violated certain FAA regulations which are intended to protect against the kinds of injuries or losses that Plaintiffs sustained. Specifically, it is alleged that in violation of

federal regulations, the Defendant Airlines (1) operated flight 4644 with excessive and life-threatening cabin air temperature; (2) failed to adequately cool the plane even thought they should have known of the risk of the lengthy tarmac delays; (3) failed to provide "adequate medical attention" in contravention of a specific regulation; and (4) failed to adhere to their federally required "Tarmac Delay Contingency Plan" by failing to ensure adequate medical attention or commit sufficient resources to the Plan. *Id.* ¶¶ 31–47.

As noted, the Defendant Airlines have moved to dismiss the negligence *per se* claim. They have not yet formally moved to dismiss the straight negligence claim. But notwithstanding the lack of a formal motion to dismiss the negligence claim, in their supplemental submission (Dkt. #52), the Defendant Airlines urged that both the negligence *per se* and negligence claims be dismissed as preempted by the ADA.

### 4. Legal Standard for Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

However, the Court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (citation omitted).

### 5. The Arguments of the Parties

The Defendant Airlines' original argument for the dismissal of Plaintiffs' negligence *per se* claim was that the Federal Aviation Act ("FFAct"), as amended by the ADA, and associated Federal Aviation Regulations ("FARs") do not create a private right of action. Dkt. #25 at 4. Absent a private right of action created by the FAAct or the FARs, the Defendant Airlines argue that the negligence *per se* claim fails on its face, because a negligence *per se* claim, with the FARs forming the basis for the regulatory violation would, in effect, be creating a right of action based on the federal regulations where Congress never intended such a right of action.

In their Reply (Dkt. #40), the Defendant Airlines took a slightly different tack, arguing not just that the FARs do not create a private right of action, but that the FAAct, the ADA, and associated FARs "occupy" the field of airline safety, and allowing a common law state tort claim to proceed would "subject airlines to a patchwork of obligations which might be contradictory to federal regulations." Dkt. #40 at 3 (citing *Joseph v. JetBlue Airways Corp.*, No. 5:11-CV-1387 (TJM/ATB), 2012 WL 1204070 (N.D.N.Y. 2012)). On this basis, the Defendant Airlines argue that because the "federal government has occupied the field in enforcing the regulations allegedly violated by Defendants, any negligence *per se* claim which seeks private enforcement of these regulations is impliedly preempted by the FAA[ct] and must be dismissed." Dkt. #40 at 4–5. In their supplemental submission (Dkt. #52), the Defendant Airlines go even further, insisting that both Plaintiffs' negligence *per se* claim and the common law negligence claim are preempted by the ADA because the Tenth Circuit has interpreted

the term "services" broadly, including all elements of air carrier service. *See* Dkt. #52 at 3.

The Defendant Airlines emphasize the words of the ADA itself, which amended the FAAct and includes a preemption clause the prohibits any state from "enact[ing] or enforce[ing] a law, regulation, or other provision having the force and effect of law relating to a price, route, or service of an air carrier . . .." 49 U.S.C. § 41713(b)(1). Congress enacted this provision "to ensure that the States would not undo federal deregulation with regulation of their own." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992).

Among other cases, the Defendant Airlines cite *Gardner v. United States*, 316 F. Supp. 3d 1308 (D. Utah 2018), where a passenger's common law tort claims were found to be preempted by the ADA. Gardner involved claims of false imprisonment, assault, and intentional and negligent infliction of emotional distress against Delta Airlines and the United States based on misbehavior and bullying by a federal air marshal during flight. The court there found the negligent infliction of emotional distress claim against Delta to be preempted by the ADA on the basis that mediation of disputes between passengers and maintaining order on the cabin to provide a safe and tranquil flight relates to the "service of an air carrier." 316 F. Supp. 3d at 1318.

Also cited is *Sawyer v. Southwest Airlines Company*, No. Civ. A. 01-2385-KHV, 2004 WL 48899 (D. Kan. 2004), where a passenger sued Southwest Airlines in tort after a flight attendant recited an allegedly racist nursery rhyme over the plane's intercom during the seating process. The plaintiff (who suffered from epilepsy) was so embarrassed and humiliated the plaintiff that she experienced a grand mal seizure. The

*Sawyer* court found that airline boarding and seating procedures are "services" under the ADA, and that state negligence law is therefore preempted, citing *Arapahoe County Public Airport Authority v. F.A.A.*, 242 F.3d 1213, 1222 (10th Cir. 2001).

Also relied on by the Defendant Airlines is *Joseph v. JetBlue Airways Corporation*, No. 5:11-CV-1387 (TJM/ATB), 2012 WL 1204070 (N.D.N.Y. 2012), a case very similar to the factual circumstances found here. In *Joseph v. JetBlue*, winter storm conditions in the Northeast had caused severe delays at airports along the East Coast, and passengers alleged they were stranded in their planes on the tarmac at Bradley International for over seven hours. Conditions became inhume and intolerable, with power outages leaving the aircraft in total darkness. Passengers were not allowed to deplane. Food and water ran out, lavatories and sinks stopped functioning and passengers began to argue, resulting in physical and verbal violence between passengers. The plaintiff passengers raised a number of claims, including false imprisonment, negligence, and negligent infliction of emotional distress.

The *JetBlue* court found that all the state law tort claims were preempted. The court determined that all the claims relate to prices, route, or services inasmuch as they were all premised on complaints about treatment while detained on the tarmac. Because the allegedly tortious conduct directly affected the service of "maintaining safety by controlling passengers' movement while the airplanes were grounded on the tarmac due to adverse weather conditions," any state tort law claims were held preempted by the ADA. The *JetBlue* court held that "to allow such a tort claim to proceed would subject airlines to a patchwork of obligations which might be contradictory to federal regulations." *Id.* at *7.

By contrast, Plaintiffs here emphasize a number of different points in arguing that preemption does not apply. First, this is a personal injury action, not a situation where a state is seeking to superimpose a new or different regulatory standard on an airline's operations. In addition, this personal injury action, as least as to the negligence *per se* claim, is alleged to involve a personal injury resulting from the Defendant Airlines' failure to abide by *existing* federal regulations. Thus, there is no potential conflict between a state law or standard and the federal standard to which airlines currently are held under federal law. The Plaintiffs are claiming they were injured as a result of the Defendant Airlines' failure to live up to those federal standards. These statutes and regulations include the following: that no person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another (14 C.F.R. § 91.13); that airlines must have, and adhere to, contingency plans for lengthy tarmac delays, which include provision of "adequate medical attention if needed, while the aircraft remains on the tarmac" (14 C.F.R. § 259.4(b)(4)); and airlines must comply with emergency contingency plans for tarmac delays (49 U.S.C. § 42301(e)(3)).

Plaintiffs assert that Congress never intended to preempt state negligence claims for bodily injury. In this regard, Plaintiffs point to the ADA's so-called "saving clause," titled "Additional Remedies," which provides that "[a] remedy under this part is in addition to any other remedies provided by law." 49 U.S.C. § 40120(c). Indeed, in *American Airlines v. Wolens*, 513 U.S. 219 (1995), the Supreme Court held that state law contract claims survived the enactment of the ADA, and remarked that such a conclusion "ma[de] sense of Congress' retention of the FAA[ct]'s saving clause." 513 U.S. at 232. *See also Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1265 (9th

Cir. 1998) ("[T]he savings clause . . . read together with the preemption clause, evidences congressional intent to prohibit states from regulating airlines while preserving state tort remedies that already existed at common law, providing that such remedies do not significantly impact federal deregulation."). *But see Morales*, 504 U.S. at 385 (describing the savings clause as a general saving clause that cannot supersede the specific preemption provision).

In addition to the saving clause, there is federal statutory insurance requirement, 49 U.S.C. § 41112(a), that requires federally certified air carriers to carry sufficient insurance to cover bodily injury, death, or property damage resulting from the operation or maintenance of the aircraft. Plaintiffs argue that the saving clause, when coupled with the insurance requirement, necessarily suggests that Congress anticipated that state law tort claims to recover for bodily injury would be permitted and not be preempted.

Plaintiffs cite numerous cases adopting this reasoning. *See Paredes v. Air-Serv. Corp.*, 251 P.3d 1239, 1249 (Colo. App. 2010) (concluding ADA successor did not preempt Colorado common law claim for negligence for personal injuries when passenger in a wheelchair fell to ground from a jetway, in part because airlines are required to maintain either liability insurance or self-insurance); *Charas*, 160 F.3d at 1265 (insurance requirement would be "pointless" unless some state tort actions survived enactment of the ADA); *Hodges v. Delta Airlines, Inc.,* 44 F.3d 334, 338 (5th Cir. 1995) (holding that federal preemption of state laws, including certain common law actions "related to services" of an air carrier, does not displace state tort actions for personal physical injuries or property damage caused by the operation and maintenance of aircraft, in part because complete preemption of state law claims for

personal injury under ADA would render insurance requirement "nugatory"); *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 194 (3d Cir. 1998) (would make "little sense" to require airlines to purchase insurance to pay for bodily injury claims if airlines were insulated from such suits by ADA's preemption provision).

### 6. Analysis

First, I reject the Defendant Airlines' argument that because Plaintiffs are relying on federal regulations as a basis for their negligence *per se* claims, Plaintiffs are seeking inappropriately to create a cause of action where Congress has not provided for one. As the Plaintiffs emphasize, they are suing under Colorado tort law, which specifically recognizes negligence *per se* as a cause of action. *See* Colo. Jury Instr., Civil 9:14 ("Negligence *Per se* – Violation of Statute or Ordinance"). Negligence *per se* may be asserted where (1) there exists a statute, regulation, or ordinance that has the purpose of protecting against the types of injuries or losses the plaintiff sustained, and (2) the plaintiff was a member of the group of persons the statute, regulation or ordinance was intended to protect. *See Scott v. Matlack, Inc.*, 39 P.3d 1160, 1166 (Colo. 2002). If the statute applies to the defendant's actions, then the statute conclusively establishes the defendant's standard of care and violation of the statute is a breach of his duty. *Id.*

In addition, Colorado courts have recognized violations of federal regulations as a proper basis for a negligence *per se* claim. *See, e.g., Hageman v. TSI, Inc.*, 786 P.2d 452, 454 (Colo. App. 1989) (holding that violation of federal highway safety regulations requiring interstate motor carriers to comply with safety standards may be the basis for negligence *per se* instruction when foundational criteria have been established). And

indeed, the United States Supreme Court itself has recognized the propriety of states using federal statutes and regulations as a basis for a state law negligence *per se* claim. *See Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 318 (2005) ("The violation of federal statutes and regulations is commonly given negligence *per se* effect in state tort proceedings.").

Specifically with respect to air travel or air transportation, courts routinely hold that violations of the FARs may be the basis for a negligence *per se* claim. *See, e.g., Sky Jet. M.G., Inc. v. Elliot Aviation, Inc.*, Case. No. 15 C 8113, 2017 WL 736894, at *14 (N.D. Ill. 2017), (listing cases supporting the proposition that that undertaking actions covered by federal aviation regulations subjects one to a duty of reasonable care, violation of which constitutes negligence *per se*); *Wojciechowicz v. U.S.*, 582 F.3d 57, 67 (1st Cir. 2009) ("The violation of FAA regulations, which have the force and effect of law, is negligence *per se*.") (dicta) (citation omitted); *Gatenby v. Altoona Aviation Corp.*, 407 F.2d 443, 446 (3d Cir. 1968) ("As the pilot of a single engine aircraft, Riguette was required to fly according to FAA visual flight regulations (VFR). Reasonable men could come to no other conclusion on this record but that certain visual flight regulations were violated. The appellant is, of course, liable for any injuries which were proximately caused by this negligence *per se*.") (citation omitted); *Rudelson v. U.S.*, 431 F. Supp. 1101, 1107 (C.D. Cal. 1977) ("A violation of Federal Aviation Regulations is negligence *per se*. This rule is consistent with California law that violation of a safety regulation is negligence *per se*.") (internal citations omitted).

The Defendant Airlines' preemption argument carries more weight, but ultimately it too fails to persuade. Field preemption occurs when a "state law . . . regulates conduct

in a field that Congress intended the Federal Government to occupy exclusively."

*English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990). As noted, the ADA provides that "a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or *service* of an air carrier." 49 U.S.C. § 41713(b)(1) (emphasis added). The United States Supreme Court has interpreted this provision as broadly preempting all actions against air carriers in "connection with or reference to airline 'rates, routes, or services'." *Wolens*, 513 U.S. at 223. *See also Morales*, 504 U.S. at 383–84 (interpreting 49 U.S.C. § 1305(a)(1), the substantively identical, pre-1994 version of the ADA preemption provision). The critical reason for the preemption provision was "to ensure that the States would not undo federal deregulation with regulation of their own." *Morales*, 504 U.S. at 378.

The Supreme Court has therefore held that the words "related to," as used in this clause, express a broad preemptive purpose and encompass all state laws "having a connection with or reference to airline prices, routes or services," even if those laws do not directly regulate those activities. *Gill v. JetBlue Airways Corp.*, 836 F. Supp. 2d 33 (D. Mass. 2011) (citing *Morales* and *Wolens*). "Under this standard, enforcement of state laws against airlines on the basis of how particular services are provided is preempted unless it affects those services in 'too tenuous, remote, or peripheral a manner' to warrant preemption." *Id.* (quoting *Morales*, 504 U.S. at 390).

But there appears at present to be some dispute among the Circuit Courts of Appeals regarding the scope of the preemptive effect of the FAAct with respect to personal injury claims arising out of aviation incidents. For example, the Sixth Circuit

has held that the FAAct and the FARs preempt any state law failure-to-warn claims in an aviation product liability case. *See Greene v. BF Goodrich*, 409 F.3d 784, 787 (6th Cir. 2005). The Third and Eleventh Circuits, however, have rejected arguments that the FAAct impliedly preempts state law product liability claims based upon a narrow definition of the "entire field of aviation safety." *See*, *e.g.*, *Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680 (3d Cir. 2016); *Pub. Health Trust v. Lake Aircraft, Inc.*, 992 F.2d 291, 294–95 (11th Cir. 1993).

For its part, the Tenth Circuit appears to have spoken with different minds about complete preemption of aviation safety-related claims. In *Cleveland v. Piper Aircraft Corp.*, 890 F.2d 1540 (10th Cir. 1989), Edward Cleveland was injured while taking off from a New Mexico airstrip in a Piper Super Club (a small two-seat general aviation aircraft). Cleveland had removed the front seat of the aircraft for the purposes of taking aerial photographs and was trying to take off while flying the plane from the back seat. The owner of the airstrip was concerned about the safety of the Cleveland's proposed operation and parked a van at one end of the runway to prevent takeoffs and landings. Cleveland hit the parked van during takeoff and was seriously injured. Cleveland's wife brought design defect claims on his behalf against the aircraft manufacturer, which sought summary judgement asserting the defense of federal preemption under the FAA.

The *Cleveland* court concluded that an airplane design defect claim resulting in personal injury was not preempted by the FFAct for two key reasons. First was the presence of the saving clause in the FFAct. The *Cleveland* panel reasoned that the saving clause, by stating Congress's intention not to limit remedies available to claimants, arguably limited the extent to which Congress has entered the field of

aviation safety and "show[ed] that Congress did not intend to occupy the field of airplane safety to the exclusion of state common law." 985 F.2d at 1442 (citing *In re Air Crash Disaster*, 635 F.2d 67, 74–75 (2d Cir. 1980), and *In re Mexico City Aircraft*, 708 F.2d 400, 407 (9th Cir. 1983)). "By its very words, the [FFAct] leaves in place remedies then existing at common law or by statute." *Id.* at 1442–43.

Second, the *Cleveland* court explained that the FAAct's express preemption clause provides that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to price, route or service of an air carrier" but makes no similar provision for air safety. *Id.* at 1443. The court used the rule of statutory construction *expression unis est exclusion alterius*—the expression of one thing is to the exclusion of the other—to conclude that the express provision "excludes consideration of all forms of implied preemption." *Id.* at 1443, 1447. Thus, the *Cleveland* plaintiff was permitted to proceed with the design defect claim notwithstanding Piper's preemption argument. As the *Cleveland* decision said in rejecting the proposition that state law personal injury claims must necessarily be preempted, "To the contrary, it appears through the savings clause that Congress has intended to allow state common law to stand side by side with the system of federal regulations it has developed." *Id.* at 1444.

By contrast, in *US Airways, Inc. v. O'Donnell*, 627 F.3d 1318 (10th Cir. 2010), the Tenth Circuit appeared to conclude that air safety was an area that Congress had intended to preempt. The *O'Donnell* case involved a passenger who had purchased and consumed numerous alcoholic beverages during a commercial flight to Albuquerque. During his drive home, the inebriated man killed himself and five others in an

automobile accident. Later, the Alcohol and Gaming Division of the New Mexico

Regulation and Licensing Department cited US Airways for serving alcohol to an

intoxicated person and issued a cease-and-desist order directing the airline to refrain

from selling or serving alcohol of any kind in the State of New Mexico without complying

with the New Mexico Liquor Control Act. 627 F.3d at 1323. Also, New Mexico rejected

US Airways' application for a public liquor license to serve alcoholic beverages to

passengers on aircraft in New Mexico. US Airways sued, arguing that New Mexico's

efforts to enforce state laws that purport to govern US Airways' in-flight alcoholic

beverage service are expressly and impliedly preempted by the ADA. The *O'Donnell*

court agreed with the airline and found that New Mexico's attempts to regulate alcohol

consumption implicated the field of aviation safety, an area that Congress intended

federal law to regulate exclusively. *Id.* at 1324. The Tenth Circuit supported its

conclusion by noting that the Federal Aviation Administration, pursuant to the FFAct,

recognized the safety implications of serving alcohol aboard airlines and had

promulgated regulations on how, to whom, and by whom alcohol may be served. *Id.* at

1325 (citing 14 C.F.R. § 121.575). The court summed up its discussion of the field of

aviation safety and the promulgated federal regulations: "Based on the FAA[ct]'s

purpose to centralize aviation safety regulation and the comprehensive regulatory

scheme promulgated pursuant to the FAA[ct], we conclude that federal regulation

occupies the field of aviation safety to the exclusion of state regulations." *Id.* at 1326.

      *O'Donnell*'s conclusion about congressional intent to occupy the field of aviation

safety marked a departure from the earlier decision in *Cleveland*. But, important to this

personal injury case, the *O'Donnell* decision limited its abnegation of *Cleveland* to state-passed statutes or regulations and pointedly did not speak to state tort remedies:

> In *Cleveland*, our analysis relied in part on the FAA statutory savings clause, which "leaves in place remedies then existing at common law or by statute." [985 F.2d] at 1442–43. Further, in *Cleveland*, we recognized the possibility that "Congress may reserve for the federal government the *exclusive right to regulate safety* in a given field, yet permit the states to maintain *tort remedies* covering much the same territory." *Id.* at 1441 (emphasis added). In contrast to *Cleveland*, [the New Mexico Liquor Control Act] does not involve state tort remedies and instead imposes substantive requirements.

*Id.* 1326. *O'Donnell* thus recognized that, while a state may not pass laws that impose requirements different from those imposed by federal aviation regulations, a state could impose tort liability for an airline's violation of federal regulations.

That is what Plaintiffs seek to do here with their negligence *per se* claim. This court has previously held that a state law tort claim for injuries arising out of an aircraft incident is not preempted. *In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colo., on Nov. 15, 1987*, 721 F. Supp. 1185, 1188–89 (D. Colo. 1988) (in multi-district litigation involving claims arising out of crash of airliner, court held that federal regulation did not preempt punitive damages claims under state law, notwithstanding broad regulation of conduct of commercial air carriers through the FFAct and regulations promulgated thereunder).

Two decisions from other jurisdictions confirm my conclusion that Plaintiffs' negligence *per se* claim is not preempted here. *Margolis v. United Airlines, Inc.*, 811 F. Supp. 318 (E.D. Mich. 1993), involved an airline passenger who claimed to have suffered injuries when a luggage carrier fell from an overhead bin and struck her on the head. The airline argued preemption of the plaintiff's state law negligence claim. The

*Margolis* court held the common law claim was not preempted, in part because state common law did not seek to impose on the airline a different standard of behavior from federal law:

> A state common law claim based on negligence and the standard of reasonable care does not purport to regulate the services that air carriers provide to their customers in exchange for their fares. The common law of negligence does not hold the airlines to a different standard of care from that provided by the Federal Aviation Act and related regulations. Further, nowhere in the legislative history or in the evolution of the statute is there any suggestion that the preemption provision of the Airline Deregulation Act was intended to preclude common law negligence actions.

811 F. Supp. at 321. *See also id.* at 322 (explaining that historically "preemption disputes involving traditional personal injury or negligence claims were almost uniformly resolved against federal preemption") (collecting cases). The *Margolis* court also noted that the FAAct fails to provide for a private right of action, distinguishing it from other areas of complete federal preemption. *Id.* at 324. The court reasoned that given the failure to provide for a federal regulatory remedy, state law could provide a remedy for personal injury, so long as that state law did not seek to impose a different standard of behavior from that set by federal regulations. *See id.* at 324 ("Because Congress has not provided for any remedy for an airline passenger who suffers personal injury due to the negligence of the airline and its employees, preemption should not apply to a claim under common law negligence to recover for personal injury."). While the *Margolis* case involved pure negligence rather than negligence *per se*, the reasoning applies equally to a negligence *per se* claim.

The second case I find persuasive is *Abdullah v. American Airlines, Inc.*, 181 F.3d 363 (3d Cir. 1999), where passengers were injured during flight as a result of turbulence and sued the airline in negligence. The Third Circuit held that federal law

establishes the applicable standards of care in the field of aviation safety generally, thus preempting the entire field from state and territorial regulation. 181 F.3d at 367. "[B]ecause of the need for one, consistent means of regulating aviation safety, the standard applied in determining if there has been careless or reckless operation of an aircraft, should be federal; state or territorial regulation is preempted." *Id.* at 372.

But the *Abdullah* court drew an important distinction between the standards for airline conduct, which are to be set by federal law, and the ability of someone injured by a violation of those standards to recover under state law. Relying on the saving and insurance clauses, the *Abdullah* court found preemption of *standards* to be completely consistent with the ability of injured persons to receive compensation under state tort law for *violation* of those standards:

> These two sections [of the FAAct] do demonstrate that Congress intended to allow for compensation of persons who were injured in aviation mishaps. [. . . W]e do not find that state and territorial law remedies are preempted, only the standards of care for the safe operation of aircraft. For that reason, the inclusion of the savings and insurance clauses on the FFA[ct] is not inconsistent with our decision. Their inclusion as a part of the FFA[ct] is in fact compatible with our determination that state and territorial damage remedies are preserved.

*Id.* at 375. Ultimately, citing the Supreme Court's decision in *Silkwood v. Kerr-McGee*, 464 U.S. 238 (1984), the *Abdullah* court held it could not infer from Congress's intent to federally preempt standards of care that "Congress also intended to bar state and territorial tort remedies." *Id.* at 376.

The *Silkwood* case involved alleged preemption of state law remedies under the Atomic Energy Act for violation of federally mandated nuclear safety regulations. The Supreme Court ultimately affirmed a sizeable punitive damages award under state tort law in the face of a federal preemption argument. 464 U.S. at 257–58. The fact that

federal nuclear safety regulations preempted state regulations did not mean that the *Silkwood* estate could not sue for state remedies for violations of those remedies. *Id. See also Bieneman v. City of Chicago*, 864 F.2d 463, 472 (7th Cir. 1988) (explaining that "[t]he identity of common law damages and penalties for disobedience to substantive rules could lead to a conclusion that where a state is forbidden to alter the substantive rule, it is forbidden to award damages. *Silkwood v. Kerr-McGee* rejects this equation . . ..").

So, despite holding that federal law preempts the standards for aviation safety, the Third Circuit in *Abdullah* concluded that traditional state and territorial law remedies continue to exist for violation of those standards: "[W]e find that state and territorial tort remedies can coexist with federal standards of care for air safety; thus, plaintiffs, who are injured during a flight as a result of the violation of federal air safety standards, may have a remedy in state or territorial law." 181 F.3d at 376. *See also Aldana v. Air East Airways, Inc.*, 477 F. Supp. 2d 489, 493 (D. Conn. 2007) (holding that Federal Aviation Act preempts use of state common law standard of care but does not preempt application of state tort remedies).

### 7. Conclusion

The reasoning in the *Margolis* and *Abdullah* cases is persuasive under the facts alleged here.[1] At least with respect to negligence *per se*, Plaintiffs are not seeking to

---

[1] By contrast, I do not find the reasoning in *Joseph v. JetBlue Airways Corp.*, 2012 WL 1204070, persuasive. While the *Joseph* case did involve a lengthy tarmac delay due to weather, the damages claimed were more in the nature of emotional distress and inconvenience, rather than personal injury. In addition, while the *Joseph* court recognized the supremacy of federal regulations, it failed to analyze the distinction between a state compensatory remedy for injury caused by an airlines' violation of a federal regulation, and a state trying to impose its own inconsistent statute or regulation.

hold the Defendant Airlines to any different or higher standards than those already established by federal regulations. They are seeking merely to recover damages for personal injury caused by the Defendant Airlines' violation of those standards. This is a permissible state court remedy for violation of a federal airline safety regulation. There is no conflict between federal law and state law under these circumstances, and no danger that the Defendant Airlines will be held to inconsistent or conflicting standards of behavior across the country. Federal preemption does not apply to eliminate Plaintiffs' negligence *per se* claim.

While the Defendant Airlines have not formally moved to dismiss Plaintiffs' common law negligence claim, the reasoning found here would seem to apply to the negligence claim as well, so long as Colorado common law does not impose a different standard of care than is imposed by federal regulation. *See Margolis*, 811 F. Supp. at 321 ("The common law of negligence does not hold the airlines to a different standard of care from that provided by the Federal Aviation Act and related regulations."); *Aldana.*, 477 F. Supp. 2d at 493 (holding in airplane accident case that common law negligence standards are preempted under the FAAct, but the right to pursue negligence claims is not, and stating that "if plaintiffs prove that defendants' negligent acts and omissions measured by FAA standards caused their injuries, then they will be entitled to pursue the breadth of common law remedies available under Connecticut law"). But the issue of Plaintiffs' negligence claim (as opposed to the negligence *per se* claim) is not before me at this time, so I issue no recommendation on that subject.

### 8. Recommendation

For the reasons stated above, it is **RECOMMENDED** that the Defendant Airlines' Partial Motions to Dismiss Plaintiffs' negligence *per se* claims (Dkt. #25 and #27) be **DENIED**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148–53 (1985), and also waives appellate review of both factual and legal questions, *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412–13 (10th Cir. 1996).**

Dated:      November 19, 2019
            Denver, Colorado

N. Reid Neureiter
United States Magistrate Judge